UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| THERESA HESS and WILLIAM HESS, individually and as next friends and guardians of B.H., a minor, | § § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-cv-00040 |
| | § | |
| BUMBO INTERNATIONAL TRUST F/K/A JONIBACH MANAGEMENT TRUST, and TARGET CORPORATION, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

This case arises from an accident involving a Bumbo Baby Seat, an infant seat manufactured by Defendant Bumbo International Trust and sold by Defendant Target Corporation. Plaintiffs Theresa and William Hess bring a number of product liability claims, alleging that a Bumbo Baby Seat caused serious injury to their infant child. Bumbo, a South African entity, filed a motion to dismiss for lack of personal jurisdiction. Alternatively, it seeks dismissal on the ground that it was not properly served because it does not fall under Texas's long-arm statute, on which the Hesses relied. After reviewing the parties' submissions, the evidence, and the law, this Court determines that it has personal jurisdiction over Bumbo and

that Bumbo was properly served. Accordingly, Bumbo's motion to dismiss is **DENIED**.

## I. BACKGROUND

The Bumbo Baby Seat is a molded foam infant seat designed, manufactured, and sold by Bumbo. The Hesses, residents of Arizona, claim that they received a Bumbo Baby Seat as a gift from Theresa Hess's sister, who purchased it at a Target in Arizona. Docket Entry Nos. 1 ¶¶ 5, 14; 12 at 1. They allege that on September 10, 2010, their then eight-month-old son sat in the Bumbo Baby Seat, which was placed on the floor, under the supervision of his babysitter. Docket Entry No. 1 ¶ 15. Without warning, they claim, their son "flipped out" of the seat onto the floor, fracturing his skull and requiring extensive medical treatment. *Id.*

Although the injury occurred in Arizona, the Hesses brought this action in federal court in Texas, where they contend Bumbo has its most significant contacts in the United States. The Hesses served process on Bumbo through the secretary of state under Texas's long-arm statute. Docket Entry No. 10. Bumbo challenged jurisdiction, arguing that it lacks the required contacts with Texas for the Court to exercise general jurisdiction. Docket Entry No. 12 at 6–7. It further challenges the Hesses' service of process, claiming that it cannot be served under the long-arm statute because it does not engage in business in Texas, and even if it did, the Hesses' causes of action do not arise out of that business. Docket Entry No. 12 at

8.  As evidence of the Court's jurisdiction over Bumbo and applicability of the long-arm statute, the Hesses point to Bumbo's extensive relationship with distributor Wartburg, Inc., a Texas company, and prior litigation that Bumbo has pursued in Texas.  Docket Entry No. 15 at 12–13, 15–16.

## II.   PERSONAL JURISDICTION

### A.  Legal Standard for Personal Jurisdiction

To invoke the power of the court, the plaintiff bears the burden of establishing jurisdiction when a nonresident defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)).  "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'"  *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).  The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts."  *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant and exercising such jurisdiction is consistent with due process. *Pervasive Software*, 688 F.3d at 220 (citation omitted).  Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  "The Due Process Clause of the Fourteenth Amendment protects a corporation . . . against being made subject to the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations.'" *Pervasive Software*, 688 F.3d at 220 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  "The canonical opinion in this area remains [*International Shoe*], in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (quoting *Int'l Shoe*, 326 U.S. at 316) (brackets in original, internal quotation marks omitted).  If a plaintiff establishes minimum contacts, the burden then shifts to the defendant to show that asserting jurisdiction would offend traditional notions of fair play and substantial justice. *Mobius Risk Group, LLC v.*

*Global Clean Energy Holdings, Inc.*, No. H–10–1708, 2012 WL 590926, at *3 (S.D. Tex. Feb. 22, 2012) (citation omitted).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Whereas specific personal jurisdiction is "case-linked" and grants a court only the power to hear "issues deriving from, or connected with, the very controversy that establishes jurisdiction[,]" general personal jurisdiction is "all-purpose" and grants a court the power "to hear any and all claims against" a party regardless of where the events at issue took place. *Goodyear*, 131 S. Ct. at 2851 (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)). As highlighted by recent Supreme Court decisions, general jurisdiction requires a substantially higher degree of contacts than specific jurisdiction. *Compare Goodyear*, 131 S. Ct. at 2851 (ruling on general jurisdiction), *with J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787–88 (2011) (ruling on specific jurisdiction). In this case, the Hesses do not contend that specific jurisdiction exists given that the injury occurred in Arizona; the sole question is whether Bumbo is amenable to general jurisdiction in Texas.

A court has general jurisdiction over a nonresident defendant "when their affiliations with the State are so 'continuous and systematic' as to render them

essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe*, 326 U.S. at 317). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). Continuous or repeated contacts will not be sufficient unless they are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Pervasive Software*, 688 F.3d at 221 (quoting *Goodyear*, 131 S. Ct. at 2853).

### B. Bumbo's Contacts

Whether Bumbo is subject to general jurisdiction in Texas is a close call. Yet despite the high threshold for general jurisdiction, the evidence in this case establishes that Bumbo has continuous and systematic commercial contacts with Texas sufficient to enable this Court's exercise of personal jurisdiction over it.

For most of the product's history in the United States, Bumbo used Texas as a central base for distributing its product within the States. Of the 3.85 million Bumbo Baby Seats in the United States, nearly one million of these were distributed by Wartburg Enterprises, Inc. from its headquarters in Conroe, which is located in the Southern District of Texas. Docket Entry Nos. 15 at 2–3; 15-1 at 6. For at least part of Wartburg's seven-year relationship with Bumbo, it served as

Bumbo's exclusive U.S. importer and distributor, taking possession of many shipments of Bumbo Baby Seats at a port in Houston.  Docket Entry No. 15-1 at 5–6, 8.  Wartburg distributed the Bumbo product to approximately 1,200 different retailers across the United States, including Walmart, Toys "R" Us, and Babies "R" Us. *Id.* at 6.

And Bumbo's relationship with Wartburg was substantially more involved than the typical manufacturer-distributor relationship.  In 2004, Wartburg facilitated Bumbo's participation in the Juvenile Products Manufacturer Association trade show held in Dallas, which a Bumbo employee attended along with Wartburg's Vice President, Mark Buchanan. *Id.*  Foreign companies were not allowed to participate in the trade show, so Bumbo used Wartburg's name and Texas address to register. *Id.*  Moreover, when the United States Consumer Product Safety Commission (CPSC) recalled the Bumbo Baby Seat in 2007, Buchanan coordinated the recall and served as Bumbo's U.S. representative. *Id.* at 6–7.  As the U.S. representative, Buchanan acted as a liaison between Bumbo and the CPSC. *Id.*  In response to CPSC mandates, Buchanan made instruction leaflets available to Bumbo consumers and sent them from his office in Texas. *Id.* at 8.  He was also involved in the development of new warnings for the product and its packaging and engaged in extensive conversations with Bumbo in South Africa regarding such. *Id.* at 7–8.  Additionally, as Bumbo's U.S. representative,

Buchanan communicated regularly on Bumbo's behalf with retailers and distributors—including retailers to whom Wartburg did not distribute Bumbo Baby Seats. Specifically, Buchanan notified retailers about the terms, conditions, and logistics of the recall, including the removal of the product from store shelves, the relabeling of boxes with new warning stickers, and the costs associated with the recall. *Id.* at 7. Buchanan also entered into contracts in Texas on Bumbo's behalf, including one with a public relations firm. *Id.* at 48.

The relationship between Bumbo and Wartburg eventually turned sour in 2010, resulting in Bumbo filing litigation both in federal court, in the Southern District of Texas, and in state court in Montgomery County, Texas.

Supreme Court case law on general jurisdiction remains sparse. Most recently, in *Goodyear Dunlop Tires Operation, S.A. v. Brown*, the Court rejected a state court's finding of jurisdiction of a foreign tire manufacturer whose only contact was its indirect placement of goods in the stream of commerce. *Goodyear*, 131 S. Ct. at 2851. This single contact was too attenuated to support general jurisdiction, and Goodyear was thus "in no sense at home" in the forum. *Id.* at 2857. In *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408 (1984), the Court found no jurisdiction over a Colombia entity even though it purchased over $4 million of helicopters and equipment from the forum, sent its employees to the forum for training and technical consultations, and received a check for over $5

million that was drawn upon a Texas bank. The Court focused on the fact that Helicopteros did "not have a place of business in Texas and never [had] been licensed to do business in the State." *Id.* at 416. Only in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), in which the defendant conducted all of its business in Ohio and the company president maintained an office in Ohio where all company files were kept and from where all company activities were supervised, has the Court found general jurisdiction over a foreign defendant. *Perkins*, 342 U.S. at 447–448.

Though Bumbo's corporate headquarters is not in Texas and it is not registered here, its contacts go well beyond those that existed in *Goodyear* and *Helicopteros*. Bumbo did much more than indirectly place items in the stream of commerce, as was the extent of Goodyear's contact with the North Carolina forum in that case. Simply from a sales perspective, the fact that a quarter (and at certain points all) of the Bumbo Baby Seats sold in the United States were distributed from Texas distinguishes this case from *Goodyear* and Fifth Circuit cases in which that aspect was found to be insufficient. *See Johnston*, 523 F.3d at 611 (holding that defendant whose sales in the forum constituted about 3% of its total business did not establish a general sales presence); *see also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (holding that defendant that earned over 12% of its total revenues in the forum state did not establish sufficient contacts). And

whereas Helicopteros purchased helicopters, parts, and accessories *from* Texas, here Bumbo purposely used Texas as the point of receipt of nearly a million units, which were then distributed and sold throughout the U.S.  This volume of business between Bumbo and Wartburg establishes a general sales presence.

Bumbo's business activities in Texas beyond this substantial sales presence further distinguish this case from those in which contacts were held insufficient to confer general jurisdiction.  The Fifth Circuit has emphasized that "in order to confer general jurisdiction a defendant must have a business presence *in* Texas.  It is not enough that a corporation business *with* Texas."  *Johnston*, 523 F.3d at 611 (emphasis in original) (citing *Access Telecom, Inc. v. MCI Telecommuns. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).  Given Wartburg's representative role in the promotion and recall of the Bumbo Baby Seat, Bumbo has maintained the requisite business presence in Texas.  The CPSC recall of a baby product is an event that can threaten the very livelihood of a business.  Bumbo's decision to handle much of that critical response out of Texas—including communications with both the regulator and concerned business customers and the development of new warnings on the product and packaging—demonstrates the extensiveness of its presence in Texas.

While the discrete aspects of Bumbo's business in Texas, examined individually, may not each be sufficient to establish minimum contacts, these

contacts "must be reviewed in toto . . . not in isolation from one another[.]" *Johnston*, 523 F.3d at 610 (citations omitted); *see also* 1 Hon. David Hittner et al., *Federal Civil Procedure Before Trial*, 5th Circuit Edition ¶ 3:102.5 (2011) (analysis should be based on the economic reality of the contacts, not a "mechanical checklist"). Bumbo's contacts more closely resemble those found in *Perkins*, in which substantial business decisions and communications were made in the forum. The longevity, continuity, and volume of Bumbo's business with its Texas-based distributor establish the type of contacts that allow Bumbo to be considered "at home" in Texas. *See Goodyear*, 131 S. Ct. at 2853–54.

In fact, Bumbo's contacts with Texas surpass those present in other post-*Goodyear* cases in which district courts have found general jurisdiction over foreign entities. *See, e.g.*, *Ruben v. United States*, -- F. Supp. 2d --, No. 12-1013, 2013 WL 210251, at *2 (E.D. Pa. Jan. 17, 2013) (finding general jurisdiction over an architecture firm that had several high-profile projects in Pennsylvania, but had no office, bank accounts, or property in Pennsylvania and derived only 1% of its U.S. revenue there); *Ashbury Int'l Grp., Inc. v. Cadex Def., Inc.*, No. 3:11CV00079, 2012 WL 4325183, at 7–8 (W.D. Va. Sept. 20, 2012) (finding general jurisdiction based on defendant's targeted solicitation of Virginia-based customers and the extent to which defendant profited from participating in the state's market for military equipment). The facts of this case put it in comfortable

company with those, and especially with *McFadden v. Fuyao N. Am., Inc.*, No. 10-CV-14457, 2012 WL 1230046 (E.D. Mich. Apr. 12, 2012), where the Eastern District of Michigan found general jurisdiction over a Chinese windshield manufacturer that had contracted with a nonparty wholesale customer (General Motors) in the forum over a number of years. *Id.* at *5. General Motors' buyer would create contracts with the manufacturer, which allowed GM plants throughout the United States to send purchase orders for windshields that were then shipped from China to the defendant's subsidiary in Michigan. *Id.* at *3. In *McFadden*, as in this case, the defendant regularly interacted with the in-forum customer concerning the management of the flow of goods into the forum, thus distinguishing that case from *Goodyear* and allowing a finding of continuous and systematic contacts. *Id.* at *4 ("[The defendant] has done more than 'merely placing a product into the stream of commerce destined for the United States.'").

A review of pre-*Goodyear* district court cases within this circuit also shows that Bumbo's contacts in Texas establish general jurisdiction.[1] For instance, in *Hewlett-Packard Co. v. Byd:Sign, Inc.*, the Eastern District of Texas found that a Japanese entity had substantial contacts in Texas based largely on the fact that its exclusive North America distributor and sales agent was in Texas and thus "much, if not all of [its] business in the United States was in some way connected with

---

[1] *Goodyear* did not purport to announce new principles or change the law of personal jurisdiction; it applied existing principles in a modern stream-of-commerce context.

Texas." *Hewlett-Packard*, No. 6:05-CV-456, 2006 WL 2822151, at *4 (E.D. Tex. Sept. 28, 2006).  The court also noted that the foreign defendant frequently visited and e-mailed with the Texas-based distributor and that it used the distributor to market the product.  *Id.* at *3.  Not only are those contacts present in the instant case, but Bumbo also used its Texas-based distributor to coordinate and facilitate a product recall.  Other pre-*Goodyear* cases have similarly found general jurisdiction with less meaningful contacts than the instant case.  *See, e.g.*, *Walter v. Sealift, Inc.*, 35 F. Supp. 2d 532, 534–35 (S.D. Tex. 1999) (finding that owner of vessels that called on the Port of Houston three to four times per year had systematic and continuous contacts with Texas); *Gorman v. Grand Casino of La., Inc.*, 1 F. Supp. 2d 656, 658–59 (E.D. Tex. 1998) (asserting general jurisdiction over casino based on pervasive local advertising in Texas); *Wilkinson v. Carnival Cruise Lines, Inc.*, 645 F. Supp. 318, 321 (S.D. Tex. 1985) (finding that cruise line had continuous and systematic contacts with Texas based on its relationship with local travel agencies and its local advertising).[2]

### C. Fair Play and Substantial Justice

Given the finding of sufficient contacts, the burden shifts to Bumbo to show that jurisdiction would offend the traditional notions of fair play and substantial

---

[2] Pre-*Goodyear* cases from other circuits have also asserted general jurisdiction with less meaningful contacts than those present here.  *See, e.g.*, *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (finding general jurisdiction based on company's "millions of dollars of sales . . . and its broad distributorship network" in the forum).

justice. *Mobius Risk Grp.*, 2012 WL 590926, at *3 (citations omitted). In this inquiry, we examine "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006). Once sufficient minimum contacts have been established, only rarely will the exercise of jurisdiction not comport with these notions. *Enviro Petroleum., Inc. v. Kondur Petroleum, S.A.*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)). This is not one of those rare cases.

Bumbo's only argument on this issue is that Texas has no interest in resolving this dispute. As established, however, Bumbo not only maintains a substantial presence in Texas and has distributed nearly a million products through Texas, but its products end up in the hands of Texas consumers. And many of Bumbo's key decisions and actions regarding the 2007 recall, including the development of new warnings that Plaintiffs contend are insufficient, occurred in Texas and affected consumers in Texas and across the country. Texas has an interest in policing any entity doing business here, and certainly has an interest in ensuring that business decisions made in its state are safe for children.

Bumbo makes no claim that defending this case in Texas would be unreasonably burdensome, and the fact that it has previously chosen to litigate here eliminates any notion that it would be.  *Int'l Transactions, Ltd. v. Emotelladora Agral Regionmontana SA de CV*, 277 F. Supp. 2d 654, 668 (N.D. Tex. 2002) (finding no unfairness in subjecting foreign defendant to jurisdiction in part because it had previously litigated in that court).  Further, there is no reason to believe that this Court cannot provide the Hesses with adequate relief or that an exercise of jurisdiction would affect the balance of the interstate judicial system.  General personal jurisdiction is established.

### III.  SERVICE OF PROCESS

Bumbo alternatively argues that it was not properly served because it was not amenable to service through the secretary of state.  The burden to show that process was properly served lies with the plaintiffs.  *See Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981).  The Hesses must allege facts which, if true, show that Bumbo is amenable to process under the statute.  *HKS, Inc. v. Diamond Jaxx Properties, LLC.*, No. 3:07-CV-0577-L, 2007 WL 2079974, *2 (N.D. Tex. July 10, 2007) (citing *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 95–96 (Tex. 1973)).  They do.

Federal Rule of Civil Procedure 4(h)(1) allows for service of process on a foreign corporation.  Fed. R. Civ. P. 4(h)(1).  Texas's long-arm statute provides

that the secretary of state is an agent for a nonresident who has not designated or maintained a resident agent if the nonresident "is required by statute to designate or maintain a resident agent or engages in business in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.044(a)(1).

Texas Civil Practice & Remedies Code section 17.042 informs when a nonresident engages in business in Texas. It provides: "In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state . . . ." *Id.* § 17.042. When Bumbo did business with Wartburg, it undoubtedly contracted with a Texas resident that was to perform the contract, at least in part, in Texas. Bumbo argues, however, that the business relationship with Wartburg is now over, and thus Bumbo no longer engages in business in Texas as the statute requires, even if it engaged in business here in the past.

But regardless of the validity of that argument, Bumbo still engages in "other acts that may constitute doing business" in Texas, such as selling thousands of its products each year to Texas residents. *Id.*; *see also BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (noting that list of activities in section 17.042 is not exclusive). "[T]he Texas long-arm statute's broad doing-business language 'allows the statute to reach as far as the federal constitutional

requirements of due process will allow.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)); *see also Guardian Royal Exchange*, 815 S.W.2d at 226 (noting that statute's broad language permits the statute to reach as far as federal due process limits will allow). As explained above, this Court's exercise of jurisdiction is within the bounds of due process.[3]

Thus, Bumbo satisfies the requirements of section 17.044 and is amenable to service under the statute. Bumbo makes no argument that the Hesses did not strictly comply with the statutory service requirements. *See Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988) (citations omitted) (requiring both that the defendant be amenable to service under the statute and that the plaintiff strictly comply with the statute). The Hesses' service on the secretary of state was thus proper, and dismissal under Federal Rule of Civil Procedure 12(b)(5) is denied.

---

[3] When arguing improper service in its moving brief, Bumbo appears to ignore section 17.044(a) and suggests that service is only proper under the statute when the proceeding "arises out of the business done in this state," as provided in section 17.044(b). *See* Docket Entry No. 12 at 8 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 17.044(b)). Under a plain reading of section 17.044(a), the statute only requires that Bumbo engage in business in Texas, rendering unnecessary an inquiry into whether the claims arose here. *Johnston v. Multidata Sys. Int'l Corp.*, No. G-06-CV-313, 2007 WL 1296204, at *25 (S.D. Tex. Apr. 30, 2007), *rev'd on other grounds*, *Johnston*, 523 F.3d at 602; *but see Lozano v. Hayes Wheels Int'l, Inc.*, 933 S.W.2d 245, 247 (Tex. App.—Corpus Christi 1996 no writ) (noting in dicta that applying section 17.044(b) would be "more appropriate" for that case than applying section 17.044(a)(1)). Bumbo seems to have recognized that point in a related case before this Court. *See Groesbeck v. Bumbo Int'l Trust*, No. 6:13-cv-00003, Docket Entry No. 17 (S.D. Tex. May 28, 2013). In any event, the proceeding arguably arose out of business done in this state given Wartburg's active role in Bumbo's product recall and related actions.

## IV.  CONCLUSION

For the reasons set forth above, Respondent's Motion to Dismiss (Docket Entry No. 12) is **DENIED**.

**SIGNED** this 20th day of June, 2013.

_____
Gregg Costa
United States District Judge